**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Richard M. ARNOLD, d/b/a Mortgage Bankers of America, Defendant–Appellant.**

**No. 91–4355**

**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Nov. 14, 1991.

Webb Biard, Paris, Tex., for defendant-appellant.

H.S. Garcia, Asst. U.S. Atty., Sherman, Tex., Bob Wortham, U.S. Atty., Beaumont, Tex., for plaintiff-appellee.

Before JONES, DUHÉ, and WIENER, Circuit Judges.

PER CURIAM:

Defendant Richard Michael Arnold raises two challenges to his sentence following a guilty plea to two counts of a multiple-count indictment. Finding no error in the sentence, we AFFIRM.

*Restitution.* Arnold's first challenge in this appeal is to the district court's order of restitution. Arnold pleaded guilty to Count 5, charging that he caused $23,000 to be wire-transferred to him from an individual as part of a fraudulent scheme. Counts 1–15 were all part of the same scheme to defraud would-be loan applicants of a non-refundable "advance fee" of one percent of the supposed loans. The amount of loss attributable to the entire scheme to defraud was $669,390. Although Counts 1–4 and 6–15 were dismissed as part of a plea bargain, the district court included as part of Arnold's sentence on Count 5 an order to pay restitution in the full amount of $669,-390.

Arnold relies on *Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), and *United States v. Cockerham,* 919 F.2d 286 (5th Cir.1990), for the principle that restitution can be ordered only for the loss caused by the specific conduct that is the basis of the offense of conviction. *Hughey* and *Cockerham* would limit restitution to the $23,-000 loss of Count 5.

 The law has changed since *Hughey,* by the Crime Control Act of 1990. Although *Cockerham* was handed down a few days after the 1990 amendments, this panel relied on *Hughey* in *Cockerham* because the date of sentencing (not the date of decision) determines the applicable law.[1] Arnold's plea and sentence (in 1991), were after the Crime Control Act of 1990, which empowers the sentencing judge to order

---

**1.** *See Hughey v. United States,* 110 S.Ct. at 1981 n. 1 (agreeing with the implicit conclusion of the Fifth Circuit that the applicable version of the Victim and Witness Protection Act of 1982, which was amended by the Crime Control Act of 1990, is the version in force on the date of sentencing, rather than the version in force on the date of the crime); *see also United States v. Hughey,* 877 F.2d 1256, 1259 n. 3 (5th Cir.1989), *rev'd,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990).

If any change in the law increases the penalty of a crime, however, the prohibition against ex post facto laws would compel the application of

**1238**

restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C.A. § 3663(a)(3) (West Supp.1991).[2]

Arnold admitted committing the acts described in Counts 1–15 and the introductory paragraphs of the indictment that describe the underlying scheme. Arnold also agreed in his plea

> [t]hat despite the fact that [he] is pleading to Count 5 ... Counts 1–15 constitute a common plan or scheme to defraud and that the loss attributable to the scheme encompassed in Counts 1–15 is as follows: [list of victims and amounts, totalling $669,390].

■ Arnold stated under oath that he understood that the crime of conviction included the "larger scheme to defraud which involved other people and other amounts of money as is named in the plea bargain agreement," and that the amount "totaled $669,390 in that common scheme to defraud." Arnold did not object to the court's restitution order in the amount of $669,390. While Arnold's failure to object to the amount of restitution does not prevent this Court's review of the issue,[3] it further indicates his agreement to pay full restitution. Similarly, he did not object to the statement in the presentence report that "[t]he defendant has stipulated that he caused losses of $669,390 to those victims

named in the indictment in Counts 1 to 15. This amount can be ordered as restitution...." Just before the sentencing, he said, "[I]f so ordered, I will make sure that those people get paid back any damages that this Count may find."

In this context, Arnold's agreement to pay "restitution as set out and ordered by the Court" denotes his agreement to pay restitution up to $669,390, the full amount of loss attributable to the fraudulent scheme. Under section 3663(a)(3), the court's order of restitution in accordance with defendant's agreement was proper.

■ *Criminal History Category.* The court added two points to defendant's criminal history points, based on its finding that Arnold committed the crime described in Count 16 (using a false Form 1040 to influence a lender) while he was on probation. *See* U.S.S.G. § 4A1.1(d). Arnold objects to this finding, which increased his criminal history to Category II.

On April 14, 1989, defendant was placed on one-year unsupervised probation for an unrelated offense. At the guilty-plea hearing, Arnold testified that "on or about April of 1989," he made a false statement to the bank. At the sentencing hearing, defendant testified that he presented the Form 1040 to the bank "right at the end of January or the first of February ... 1989.... The 1040 was given to the bank

---

the version of the law in force on the date of the crime. *See* U.S. Const. art. I, § 10, cl. 1.

We note further that this Circuit has not addressed the question whether *Hughey,* if applicable, would be extended to crimes involving as an element a scheme. *See United States v. Marsh,* 932 F.2d 710 (8th Cir.1991) (suggesting that whether the crime charged is one requiring an underlying scheme or not, restitution is limited to the specific conduct underlying the convictions) (dicta).

**2.** This Court finds no violation of the prohibition against ex post facto laws in Arnold's situation. The amendment became effective November 29, 1990, between the commission of the crime and the guilty plea. The legislation is not applied retroactively to enhance the penalty for past conduct, but rather is applied prospectively to validate Arnold's plea agreement. Whether Arnold had "fair warning" of a change in the law affecting the validity of plea agreements at the time the crime was committed is of no moment. When he made his agreement, he had

"fair warning" that restitution could be ordered under the agreement.

Because this amendment applies without violation of the ex post facto clause, we need not rely on § 3663(a)(2), which was also amended by the Crime Control Act of 1990. Section 3663(a)(2), if applied, would compel the same result: it expands the definition of "victim" to include, for crimes involving as an element a scheme, "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." We pretermit the constitutional question whether retroactive application of this subsection would violate the ex post facto clause. Section 3663(a)(3) regarding plea agreements, which presents no such potential violation of the ex post facto clause, determines this case without § 3663(a)(2).

**3.** If the restitution ordered were indeed in violation of law, this Court would remand to correct the error. *See* 18 U.S.C.A. § 3742(b) (West 1985 and West Supp.1991).

and through the—through the realtor, who took all of the documents along with the earnest money check ... to the bank." Defendant then testified that he at first did not know how the Form 1040 made it to the bank, but that he later learned that it arrived there in January 1989.

Defendant urges that the crime—the false representation—was complete before the loan closed on May 25, 1989, because actual reliance or disbursement of funds by the bank is not a necessary element of the offense. It does not appear that the trial court regarded the closing date as determinative: the court found that the defendant was on probation specifically "at the time he submitted the tax return to the bank."

This Court accepts the finding of the district court unless it is clearly erroneous. 18 U.S.C. § 3742(e). The court may have inferred that the false 1040 was not presented to the bank until after April 14 from evidence that the earnest-money contract was not signed till April 17. Additionally, recognizing that the trial court had to evaluate the inconsistent testimony of the defendant about when the false form was presented to the bank, this Court is especially reluctant to disturb its finding.

For the foregoing reasons, the sentence of the district court is in all respects

AFFIRMED.