974 F.2d 1338
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Delmer FLANZ, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 92-1043.
 United States Court of Appeals, Sixth Circuit.
 Aug. 25, 1992.
 
 Before DAVID A. NELSON, ALAN E. NORRIS and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from a sentence and order of restitution imposed after the defendant pleaded guilty to one count of mail fraud in violation of 18 U.S.C. § 1341. The defendant presents three assignments of error: (1) that the district court erred in its calculation of the loss associated with the offense; (2) that the district court erred in increasing the offense level for obstruction of justice; and (3) that the district court erred in ordering the payment of restitution in excess of the amount involved in the count to which the defendant pleaded guilty. Finding none of the defendant's arguments persuasive, we shall affirm the judgment.
 
 
 2
 * The defendant, Delmer Flanz, was the owner and president of Delmer Industries, a company that sold wooden pallets. Mr. Flanz fabricated invoices and shipping documents purporting to show shipments of pallets for which no payment had been received. Flanz then had an attorney mail copies of the fictitious records to the supposed recipients of the pallets; the records were accompanied by letters demanding payment. When payment was not forthcoming, Flanz threatened to sue. In many cases suits were actually filed. Rather than engage in expensive litigation, victims of the scam generally settled.
 
 
 3
 Postal inspectors began to investigate Delmer Industries in December of 1989, and Flanz was called to appear before a federal grand jury in the summer of 1990. He testified, among other things, that an employee named Bishop Davis--a man who had died a year earlier--was responsible for keeping and maintaining some of the business records at Delmer Industries.
 
 
 4
 In May of 1991 the grand jury handed up an indictment charging Flanz with 14 counts of mail fraud. Flanz and the government subsequently entered into a plea bargain under which Flanz agreed to plead guilty to count one of the indictment,[1] and the government agreed to drop the remaining counts. The agreement also provided that Flanz would pay restitution in an amount equal to the total loss sustained by the victims named in the indictment, which amount was agreed to be between $20,000 and $40,000.
 
 
 5
 It was agreed further that the offense carried a base offense level of 6 under U.S.S.G. § 2F1.1 (Fraud and Deceit); that an increase of 7 levels would be appropriate on the basis of attempts involving between $120,000 and $200,000; and that an increase of 2 levels was warranted because more than minimal planning was involved. The agreement also stated that the government could offer additional proof at the sentencing hearing to assist in the calculation of the final sentencing range.
 
 
 6
 A presentence report prepared by a probation officer recommended that Flanz be sentenced under the guidelines in effect at the time of the offense (the June 1988 version). Instead of a 7-level increase for a dollar figure between $120,000 and $200,000, the report recommended an 8-level increase based on an attempt to defraud the target companies of approximately $531,000. See U.S.S.G. § 2F1.1(b)(1)(I) (June 1988).[2] The report recommended that Flanz receive a 2-level reduction pursuant to U.S.S.G. § 3E1.1(a) for acceptance of responsibility.
 
 
 7
 The government filed an objection in which it maintained that Flanz should receive a 2-level increase under § 3C1.1 for obstruction of justice. The government argued that Flanz had committed perjury before the grand jury in stating that one-time employee Davis was in charge of maintaining business records for Delmer Industries. The government presented a number of affidavits by members of Mr. Davis' immediate family indicating that Davis worked only as a general laborer; that he did not hold any type of office job; that Davis had a sixth-grade education and had difficulty reading and working with numbers; and that Flanz had contacted the affiants in June of 1991 and told them that Davis did in fact work as a bookkeeper and that they should not tell the authorities he had contacted them. The government also alleged that Flanz' answer before the grand jury was inconsistent with his testimony at an earlier deposition in a civil proceeding.
 
 
 8
 Mr. Flanz objected to the probation officer's calculation of the amount of loss. Flanz argued that at least some of the bills could have been legitimate and that the companies could not tell which ones which were not legitimate.
 
 
 9
 At a sentencing hearing held in December of 1991 the government produced an affidavit from a postal inspector stating that the amount of projected loss was over $550,000. Flanz offered no evidence to prove otherwise. With respect to its obstruction of justice claim, the government produced the affidavits of Davis' family members. The district court concluded that the amount of the projected loss warranted an 8-level increase; that a 2-level increase for obstruction of justice was appropriate; and that a 2-level reduction for acceptance of responsibility was also appropriate. Rejecting a government request for an upward departure, the district court calculated the base offense level at 16. With a Criminal History Category of I, this produced a guideline range of imprisonment for 21 to 27 months. Flanz was sentenced to serve 24 months plus three years of supervised release; to pay a fine of $10,000; and to pay restitution in the amount of approximately $32,850. This appeal followed.
 
 II
 
 10
 Flanz contends that the district court erred when it held that the attempted fraud involved more than $500,000. He contends that the court should have used only the actual loss reflected in the indictment, because the total amount he attempted to get could not be verified. We disagree.
 
 
 11
 The district court was not limited to the loss actually incurred. See United States v. Schneider, 930 F.2d 555, 556 (7th Cir.1991). Application Note 7 in the Commentary to U.S.S.G. § 2F1.1 provides that "if a probable or intended loss that the defendant was attempting to inflict can be determined, that figure [should] be used if it was larger than the actual loss." Application Note 8 says that the calculated loss does not have to be precise; that the court does not have to identify each victim and his exact amount of loss; and that the court need only make a reasonable estimate of the range of loss, given the available information. The district court's calculation of the amount of loss is a finding of fact subject to review under a "clearly erroneous" standard. United States v. Tobi, No. 91-3662 (6th Cir. April 17, 1992) (unpublished); United States v. Rothberg, 954 F.2d 217, 219 (4th Cir.1992); cf. United States v. Robinson, 898 F.2d 1111, 1116 (6th Cir.1990).
 
 
 12
 Flanz had filed over 60 lawsuits since 1985. The government presented a sworn affidavit by the postal inspector assigned to the case, who had conducted a thorough investigation that included interviews and searches of court records. The inspector swore that his investigation revealed that Flanz had demanded money exceeding $550,000. No evidence was presented by the defendant to counter that amount. It was not clearly erroneous for the district court to conclude that Flanz had engaged in conduct designed to produce a loss in excess of $500,000.
 
 III
 
 13
 Flanz next contends that the district court erred by increasing his offense level for obstruction of justice. Under U.S.S.G. § 3C1.1, the district court can impose a 2-level increase if the defendant willfully obstructed or attempted to obstruct or impede the administration of justice during an investigation of the offense for which he was charged. The types of conduct in question include committing or suborning perjury and providing law enforcement officials false statements that significantly impeded an investigation. See Application Note 3 in the Commentary to § 3C1.1.
 
 
 14
 There is ample evidence that Flanz attempted to interfere with the investigation and that he committed perjury. He testified before the grand jury that Mr. Davis was responsible for keeping some of the books of Delmer Industries, and this testimony was clearly shown to have been false. Flanz attempted to influence the statements of witnesses during an investigation by contacting Davis' family members and telling them that Davis was the bookkeeper when in fact he was not. Finally, Flanz provided the grand jury with false documents that he represented to be business records of the company. The district court did not err in imposing the 2-level increase.
 
 IV
 
 15
 Flanz contends that the district court erred when it ordered restitution in the amount of approximately $32,850. He contends that under Hughey v. United States, 495 U.S. 411 (1990), the amount of restitution should be limited to the amount involved in the offense of which he was convicted ($3,850).
 
 
 16
 In Hughey, the Supreme Court held that "the language and structure" of the Witness Protection Act of 1982 "make plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." Id. at 413. The Court thus held that the defendant--although charged with multiple offenses--could be ordered to make restitution only for the losses incurred in offense of which he was convicted.
 
 
 17
 Subsequent to the Supreme Court's decision in Hughey, the Victim and Witness Protection Act was amended, effective November 29, 1990, by the Crime Control Act of 1990, Pub.L. No. 101-647, § 2509, 104 Stat. 4789, 4863 (1990), to allow the court to impose restitution to the extent agreed upon in a plea agreement. See 18 U.S.C. § 3663(a)(3) ("The court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement").
 
 
 18
 In the case at bar, the plea agreement entered into on August 14, 1991, stated that restitution would be justified in an amount between $20,000 and $40,000. Since $32,850 is within the range stipulated by the parties in the plea agreement, the court was authorized to enter an order of restitution in that amount. See United States v. Arnold, 947 F.2d 1236 (5th Cir.1991).
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 Count one charged that Flanz used the United States mails fraudulently to obtain $3,850 in settlement of a lawsuit for a debt not actually owed
 
 
 [2]
 The version of the guidelines in effect at the time of the offense provided for an 8-level increase if the amount exceeded $500,000. Under the version in effect at the time of sentencing, the increase would be 10 levels. The government does not object to the use of the guidelines in effect at the time the offense occurred