**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                No. 95-5854

MICHAEL P. SCHAEFER,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, District Judge.
(CR-93-6, CR-91-223)

Argued: June 3, 1997

Decided: August 13, 1997

Before WILKINS, NIEMEYER, and HAMILTON, Circuit Judges.

_____

Affirmed by published opinion. Judge Wilkins wrote the opinion, in
which Judge Niemeyer and Judge Hamilton joined.

_____

**COUNSEL**

**ARGUED:** Lyle Joseph Yurko, YURKO & OWENS, P.A., Charlotte,
North Carolina, for Appellant. Robert James Conrad, Jr., Assistant
United States Attorney, Charlotte, North Carolina, for Appellee. **ON
BRIEF:** N. Todd Owens, YURKO & OWENS, P.A., Charlotte,
North Carolina, for Appellant. Mark T. Calloway, United States
Attorney, William A. Brafford, Assistant United States Attorney,
Charlotte, North Carolina, for Appellee.

_____

**OPINION**

WILKINS, Circuit Judge:

Following a hearing during which Michael P. Schaefer admitted to having committed probation violations, the district court determined that it was "constrained" to impose a sentence within the guideline range of 46-57 months imprisonment applicable when Schaefer initially was sentenced. J.A. 108. Schaefer appeals the 46-month sentence subsequently imposed, arguing that the district court erred in concluding that it lacked discretion to depart downward from the guideline range. We affirm.

I.

From 1990 to 1992, Schaefer participated in several conspiracies to defraud investors, ultimately bilking his victims of more than $800,000. In January 1993, Schaefer pled guilty to conspiring to commit offenses against the United States, see 18 U.S.C. § 371 (1988); mail fraud, see 18 U.S.C. § 1341 (Supp. V 1994); and wire fraud, see 18 U.S.C. § 1343 (Supp. V 1994). It is undisputed that the guideline range applicable to Schaefer's sentencing on these charges was 46-57 months imprisonment. But, because Schaefer had assisted law enforcement authorities in the investigation of his coconspirators, the Government moved for a downward departure to reward Schaefer for his substantial assistance. See U.S. Sentencing Guidelines Manual, § 5K1.1, p.s. (1993). Rejecting the Government's recommendation of an active term of imprisonment, the district court drastically departed from the applicable guideline range and imposed a sentence of five years probation.

Unbeknownst to the Government, even before his sentencing hearing, Schaefer had resumed his criminal activities while free on bond. From late 1993 through May 1994, Schaefer conducted a fraudulent home improvement scheme in Arizona, swindling victims of more than $90,000. And, several months after his sentencing hearing, Schaefer moved to Nebraska and continued his criminal conduct, defrauding victims of at least $288,000. In early 1995, the probation office filed a petition seeking the revocation of Schaefer's probation

2

and the issuance of an arrest warrant. Schaefer absconded and remained a fugitive until his arrest in May 1995.

In October 1995, the district court conducted a probation violation hearing. Schaefer admitted committing seven violations of his probation, including making false representations to his probation officer concerning his financial information and address and failing to abide by conditions of his probation that required him to pay restitution, to refrain from possessing a firearm, and to avoid the commission of any further state or federal offenses. At the conclusion of the evidentiary hearing, the district court ruled that Schaefer's probation should be revoked.

Turning to the question of the appropriate sentence to impose, the district court accepted the Government's position that the version of 18 U.S.C. § 3565(a)(2) in effect prior to September 1994--the time during which most of the conduct underlying Schaefer's probation violations occurred--required that Schaefer be sentenced within the 46-57 month guideline range applicable at his initial sentencing. Consequently, the district court sentenced Schaefer to 46 months imprisonment. Schaefer now appeals, contending that the district court erred in concluding that the version of § 3565(a)(2) in effect prior to September 13, 1994 governed his resentencing and, alternatively, that even if the prior version of the statute was applicable, the district court was not prohibited from considering a downward departure from the applicable guideline range.

II.

Before turning to address Schaefer's arguments, it is necessary to frame them with an understanding of the background of § 3565(a)(2). Prior to September 1994, if a district court revoked a defendant's probation, § 3565(a)(2) required that the district court "impose any other sentence that was available under subchapter A at the time of the initial sentencing." 18 U.S.C. § 3565(a)(2) (1988). In United States v. Alli, 929 F.2d 995, 997 (4th Cir. 1991), this court construed § 3565(a)(2) to require that "[w]hen probation given under a guideline sentence is revoked, the court is limited at resentencing to a sentence that was available at the time of the original sentence." Noting that "[a]ll of the circuits which have considered this issue have concluded

3

that the clear language of § 3565(a)(2) controls, and that upon resentencing, following revocation of probation, the court is limited to a sentence within the guidelines available at the time of the initial sentence," id. at 998, we rejected the Government's argument that conduct giving rise to the probation revocation could provide an appropriate basis for an upward departure from the guideline range applicable at the original sentencing, see id. at 998-99. Instead, although recognizing that consideration of post-sentencing conduct was appropriate, this court adopted the position taken by the other courts of appeals and held that a departure from the guideline range calculated at the initial sentencing would be appropriate only if based upon a pre-sentencing factor that was brought to the attention of the district court at the initial sentencing hearing and that would have provided a proper basis for departure at that time. See id. at 998.

Thereafter, effective in September 1994, § 3565(a)(2) was amended to require a district court to "resentence the defendant under subchapter A" if it chose to revoke a sentence of probation. 18 U.S.C.A. § 3565(a)(2) (West Supp. 1997). This amended provision plainly permits a district court to begin the sentencing process anew and to impose any sentence appropriate under the provisions of subchapter A, i.e., one that satisfies statutory and guideline requirements. See 18 U.S.C.A. §§ 3551-3559 (West 1985 & Supp. 1997).

A.

Interestingly, the principal point of contention with respect to § 3565(a)(2) has been whether it was appropriate for a district court to base a departure from the guideline range on a defendant's post-sentencing conduct. See, e.g., Alli, 929 F.2d at 998. By virtue of the fact that this question arises in connection with a probation revocation based on the defendant's post-sentencing misconduct, defendants typically have taken the position that post-sentencing circumstances may not appropriately be considered by the district court. See, e.g., id. at 996. Apparently confident, however, that the lenient treatment he had been accorded previously by the district court would continue, Schaefer first contends that the district court erred in applying the version of § 3565(a)(2) in effect prior to September 1994 and that application of the amended version of that provision would have permitted the district court to consider a departure from the applicable guideline

4

range based on factors that were not presented during the original sentencing hearing.**1**

We do not agree that the district court applied the incorrect version of the statute.**2** As a general matter, the law in effect at the time governs sentencing. See Hughey v. United States, 495 U.S. 411, 413 n.1 (1990); United States v. Diamond, 969 F.2d 961, 967 n.10 (10th Cir. 1992).**3** However, 1 U.S.C.A. § 109 (West 1985) provides in pertinent part:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

In United States v. Cook, 890 F.2d 672, 675 (4th Cir. 1989), a defendant argued that the reclassification of her offense from a Class B at the time of the offense to a Class C at the time of sentencing rendered her eligible for a sentence of probation. We disagreed, reason-

_____

**1** The Government asserts that we may affirm the decision of the district court even if we conclude that Schaefer is correct that the district court was not "constrained" to sentence him within the original guideline range. This is so, it maintains, because Schaefer failed to present any grounds to the district court warranting departure. We disagree that we could affirm on this record. The sentencing colloquy makes plain that Schaefer declined to present argument and evidence in support of his position that a downward departure was appropriate in view of the announced legal conclusion of the district court that it was bound to sentence him within the original guideline range.

**2** Schaefer does not maintain that the district court could have imposed a departure sentence simply because a portion of the misconduct supporting the probation revocation occurred after September 1994.

**3** Of course, this general rule--that the law in effect at the time of sentencing applies--is subject to the further exception prohibiting ex post facto laws. See U.S. Const. art. I, § 10, cl. 1; United States v. Arnold, 947 F.2d 1236, 1237 n.1 (5th Cir. 1991) (per curiam).

5

ing that because at the time Cook committed her offense, probation, by statute, was not a penalty that the district court could impose, and that since the amending provision did not expressly provide to the contrary, § 109 foreclosed "a statutory change in offense classification that occurs between the time of the violation and subsequent sentencing from making probation an available penalty at sentencing." Id. at 676. This reasoning compels a similar result here. Prior to the September 1994 amendment to § 3565(a)(2), a district court could not consider post-sentencing conduct as a basis for departure, and thus was required to impose a sentence within the applicable guideline range unless a ground supporting departure had been brought to the attention of the district court during the initial sentencing hearing. Following the amendment to § 3565(a)(2), the district court was permitted to consider post-sentencing factors as a basis for departure, a situation that Schaefer acknowledges may lead to a less severe sentence than the one that otherwise would be required. Accordingly,[4] § 109 prevents the district court from applying the amended provisions of § 3565(a)(2) to impose a sentence lower than that allowed under the former version of § 3565(a)(2).

B.

Schaefer alternatively contends that even if the pre-September 1994 version of § 3565(a)(2) is applicable, the district court nevertheless erred in refusing to consider a downward departure from the original guideline range. He stresses that our Alli decision indicated that upon resentencing following a probation revocation, the district court could correctly consider any "sentence that was available at the time of the original sentence." Alli, 929 F.2d at 997. Because a downward departure based on the Government's substantial assistance motion was available at the time of his original sentencing, Schaefer maintains that the district court was not "constrained" to impose a sentence within the applicable guideline range, and instead could have considered a downward departure.

Although Schaefer's reasoning is correct as a general matter, under the specific facts presented here, his argument must fail. In Alli, we

_____

**4** We note that the amendment to§ 3565(a)(2) does not expressly provide to the contrary.

6

did indicate that if circumstances had been presented to the district court authorizing departure at the initial sentencing hearing, the district court could consider those circumstances as a basis for departure at resentencing on the probation revocation. See id. at 998. However, we were not called upon in Alli to address the significance of a departure for substantial assistance under U.S.S.G. § 5K1.1, p.s. Addressing that specific issue, we conclude that a departure under § 5K1.1, p.s. is different from the typical basis for departure, and this difference dictates a different result. Unlike all other grounds for departure, in order for a district court to base a departure upon a defendant's substantial assistance to law enforcement authorities, the Government must first move the district court to do so. See Wade v. United States, 504 U.S. 181, 184-85 (1992); United States v. Wallace, 22 F.3d 84, 87 (4th Cir. 1994); 18 U.S.C.A. § 3553(e) (West Supp. 1997); U.S.S.G. § 5K1.1, p.s. Thus, although a sentence based on substantial assistance may have been available at the initial sentencing based on the Government's motion, it cannot be considered to be available at resentencing following a probation revocation absent a renewed motion by the Government. See United States v. Denard, 24 F.3d 599, 601-02 (4th Cir. 1994) (ignoring downward departure based on substantial assistance in setting forth initial guideline range for resentencing on probation revocation); see generally United States v. Redmond, 69 F.3d 979, 981 (9th Cir. 1995). There is no dispute that the Government did not renew its prior departure motion, nor does Schaefer advance any argument that the Government was bound to do so. See Wallace, 22 F.2d at 87. Accordingly, at the sentencing hearing following the probation revocation, because the Government did not move for a departure based on substantial assistance, and because the parties agree that there was no other proper basis for departure brought to the attention of the court during the initial sentencing hearing, the district court properly concluded that it was constrained to sentence Schaefer within the applicable guideline range. We therefore affirm.

AFFIRMED