# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 27, 2021

Lyle W. Cayce
Clerk

No. 20-50630

United States of America,

*Plaintiff—Appellee*,

*versus*

Prince Charles Nana Yaw Owusu Boateng,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
No. 5:17-CR-880

Before Owen, *Chief Judge*, Smith and Graves, *Circuit Judges*.

Per Curiam:*

Defendant-Appellant Prince Charles Nana Yaw Owusu Boateng appeals the district court's modified sentence imposing $11,032.03 in restitution for his conviction pursuant to a plea agreement on one count of access device fraud. The primary issues are whether the district court exceeded its statutory authority in setting restitution above $5,191.33, the

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-50630

amount to which Owusu stipulated in his plea agreement, and whether the district court exceeded its authority under rule 35(a) of the Federal Rules of Criminal Procedure in increasing an initial restitution order of $9,950 to $11,032.03. We affirm.

I.

In November 2017, a federal grand jury indicted Owusu on two counts of access device fraud and two counts of aggravated identity theft, charging that he used two fraudulently obtained Capital One credit cards for around forty unauthorized purchases over the course of a year. Owusu pled guilty to Count Two—access device fraud in violation of 18 U.S.C. § 1029(a)(5)—for his use of a credit card ending in 5001 between September 30, 2015, and September 30, 2016. Owusu admitted that he "used this card to effect transactions which had an aggr[eg]ate value [of] over $1000" during that one-year period. He stipulated that Capital One "suffered approximately [$]5191.33 in losses for [Owusu's use of] the credit card," and that restitution was mandatory under 18 U.S.C. §§ 3663 and 3664. Owusu agreed to pay restitution for "the charged crime and relevant conduct." Finally, Owusu agreed to a standard waiver of his right to appeal his sentence, including "any . . . monetary penalty or obligation."

In the presentence report ("PSR"), a probation officer concluded that Owusu's relevant offense conduct caused $11,032.03 in losses to Capital One. The PSR noted the stipulated $5,191.33 in losses attributable to the 5001 card, but the PSR also listed a loss amount of $5,840.70 for Boateng's unauthorized use of another credit card during the same one-year period, which was charged in Count 1. The PSR concluded that restitution in the amount of $11,032.03 was required under 18 U.S.C. § 3663A, the Mandatory Victims Restitution Act. Owusu objected to the PSR and argued that he was responsible for less than $10,000 in restitution but he did not advocate a

2

No. 20-50630

specific amount. At the sentencing hearing, Owusu developed this objection and asked that restitution be set below $10,000. Owusu acknowledged that the district court had authority to set restitution above the $5,191.33 figure to which he agreed in his plea, but he argued that the government's requested $11,032.03 figure was unfair given his financial situation and risk of deportation, and given his substantial cooperation with the government. The government argued that Owusu caused $11,032.03 in losses and requested restitution in that amount, but the government did not contend that the district court lacked discretion to deviate from that figure. The district court ultimately concluded that the government "could pursue restitution for losses arising from [Owusu's] relevant conduct, not just the conduct admitted in his guilty plea," but the district court set restitution at $9,950.

Eight days later, the government filed a motion "to amend/correct" Owusu's sentence to set restitution at $11,032.03, arguing that the district court lacked discretion to set restitution below $11,032.03. Owusu responded that the district court had no authority to make the requested change. On July 13, 2020, the district court held a hearing on the government's motion. Owusu again asserted that the $11,032.03 figure is unreliable, and that the most "reliable way to order restitution" is "to take the 5,000-dollar amount agreed to in the plea agreement. But the defense understands the concept of relevant conduct and agrees to something more than that." The government responded that any figure less than $11,032.03 would not make Capital One whole.

The district court then explained that at the initial sentencing it had concluded "that the 11,000-plus number was the correct number," but that it had "reduced it to $9,950 because I felt [Owusu] wouldn't be able to pay that anyway in full and I could this way mitigate the impact of the sentence on his [immigration status,] because he has made great strides and he's doing better and I didn't want to see him . . . get deported over $50." The district

court emphasized that it lacked discretion in setting restitution, but it did not cite which statute purportedly limited its discretion. The district court concluded that it had "made a mistake of law" in its initial sentence, because it "thought that [it] could apply the 3553 factors and mitigate the sentence in an appropriate fashion." The district court then entered an order amending Owusu's sentence to impose restitution for $11,032.03.

Owusu timely appealed and we have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. Owusu argues that the district court exceeded its statutory authority by setting restitution above the stipulated $5,191.33 amount, and that the district court further lacked authority under Federal Rule of Criminal Procedure 35(a) to increase the restitution order. The government argues that Owusu waived his right to make these arguments on appeal because his appeal waiver contained no express reservations for sentences exceeding the statutory maximum or beyond the district court's rule 35(a) authority. There is caselaw to the contrary. *See, e.g.*, *United States v. Kim*, 988 F.3d 803, 811 (5th Cir. 2021) ("[I]t is clear that an otherwise valid appeal waiver is not enforceable to bar a defendant's challenge on appeal that his sentence, including the amount of a restitution order, exceeds the statutory maximum, notwithstanding the lack of an express reservation to bring such a challenge."); *United States v. Thompson*, 417 F. App'x 429 (5th Cir. 2011) (holding that a comprehensive appeal waiver did not bar an appeal challenging the district court's authority under rule 35). However, we need not resolve whether Owusu waived this appeal, because his arguments fail on the merits. *Cf. United States v. Story*, 439 F.3d 226, 230 (5th Cir. 2006) (holding that an appeal waiver does not deprive this court of jurisdiction); *United States v. Marunda*, 731 F. App'x 281, 285 (5th Cir. 2018) (noting tension between precedents and reaching merits rather than deciding whether a waiver barred challenge to restitution order).

II.

We review de novo the legality of a restitution award, *United States v. Maturin*, 488 F.3d 657, 659 (5th Cir. 2007), but if the law permits an award, we "review the propriety of a particular award for an abuse of discretion." *United States v. Hughey*, 147 F.3d 423, 436 (5th Cir. 1998). We review for clear error the district court's factual findings supporting the award. *United States v. Sharma*, 703 F.3d 318, 322 (5th Cir. 2012). "A factual finding is clearly erroneous only if 'based on the record as a whole, we are left with the definite and firm conviction that a mistake has been committed.'" *Id*. (quoting *United States v. Teel*, 691 F.3d 578, 585 (5th Cir. 2012)).

Federal courts have no inherent authority to order restitution as part of a criminal sentence; they may do so only pursuant to statutory authority. *United States v. Espinoza*, 677 F.3d 730, 732 (5th Cir. 2012). The district court's award of restitution in this case is governed by 18 U.S.C. § 3556, which provides that "[t]he court, in imposing a sentence on a defendant who has been found guilty of an offense shall order restitution in accordance with [18 U.S.C. §] 3663A, and may order restitution in accordance with [18 U.S.C. §] 3663." In 1982, Congress enacted the Victim and Witness Protection Act, codified at 18 U.S.C. § 3663 ("VWPA"), which authorizes district courts to, in their discretion, order restitution for crime victims. *See* 18 U.S.C. § 3663(a)(1)(A) (stating that a district court "may order" that a defendant make restitution to any victim of an offense). The VWPA requires that a court consider the defendant's financial circumstances before ordering restitution. *See* 18 U.S.C. § 3663(a)(1)(B). In 1996, Congress enacted the Mandatory Victims Restitution Act ("MVRA"), which made restitution mandatory in certain cases, particularly for crimes of violence and theft with identifiable victims who "suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)). The MVRA applies in relevant part to any "offense against property under [Title 18], . . . including any offense committed by

fraud or deceit[.]" 18 U.S.C. § 3663A(c)(1)(A)(ii). Unlike the discretionary restitution that the VWPA authorizes, the MVRA prohibits courts from considering defendants' economic circumstances when determining the restitution amount. 18 U.S.C. § 3664(f)(1)(A).

Although restitution for MVRA-covered offenses is mandatory, the statute "limits restitution to the actual loss directly and proximately caused by the defendant's offense of conviction. An award of restitution cannot compensate a victim for losses caused by conduct not charged in the indictment or specified in a guilty plea." *Sharma*, 703 F.3d at 323. But "when the subject offense involves a scheme, conspiracy, or pattern of criminal activity," that is, where the fraudulent scheme is an element of the conviction, "restitution may be awarded to any person who is directly harmed by the defendant's course of criminal conduct." *Hughey*, 147 F.3d at 437. "When the count of conviction does not require proof of a scheme, conspiracy, or pattern, . . . the defendant is only responsible to pay restitution for the conduct underlying the offense for which he has been convicted." *Maturin*, 488 F.3d at 661 (citation and internal quotation marks omitted).

The restitution statutes provide an exception to these general rules for cases in which the defendant has agreed to restitution beyond the amount alleged in an indictment. The VWPA provides that "[t]he court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3); *see also id.* § 3663A(a)(3) ("The court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense."). Accordingly, a defendant may consent to restitutionary liability for relevant conduct beyond the specific conviction count. *See United States v. Miller*, 406 F.3d 323, 330 (5th Cir. 2005).

No. 20-50630

III.

Owusu challenges the district court's second restitution order of $11,032.03 as exceeding the statutory maximum. Owusu's fraud conviction is subject to the MVRA, *see* 18 U.S.C. § 1029(a); *id.* § 3663A(c)(1)(A)(ii), and thus Owusu necessarily is liable for at least $5,121, the amount to which he stipulated in his plea agreement.[1] However, in pleading guilty, Owusu agreed that restitution "shall be imposed" pursuant to the VWPA. The district court therefore had two sources of restitution authority beyond the base $5,121 amount: the MVRA and the VWPA.

The $11,032.03 figure was perhaps permissible under the VWPA. The VWPA authorizes a court to order restitution to the extent agreed to in a plea agreement. 18 U.S.C. § 3663(a)(3). Section 3663 provides statutory authority for the parties to agree that a defendant will pay restitution for relevant conduct, and Owusu agreed "that the total sum of restitution involving the charged crime and relevant conduct shall be determined by the Government and/or the United States Probation Office prior to sentencing." Crucially, Owusu also agreed to pay restitution for "*the charged crime and relevant conduct.*" Owusu's plea agreement therefore authorized the district court to order restitution beyond the amount set out in his conviction offense. *See Miller*, 406 F.3d at 330 (concluding that a defendant consented to restitution beyond the conviction count via a plea agreement stating that a sentence "may include restitution arising from all relevant conduct"). However, the VWPA requires that district courts consider a defendant's financial circumstances before setting restitution, *see* 18 U.S.C. § 3663(a)(1)(B), and Owusu maintains on appeal that the district court did not consider Owusu's

---

[1] Owusu does not dispute that the MVRA applies to his offense and mandates liability for at least $5,191.

financial circumstances at either sentencing hearing. *Cf. United States v. Harris*, 302 F.3d 72, 75 (2d Cir. 2002) (vacating a restitution order under the VWPA where the district court failed to affirmatively demonstrate that it had considered the defendant's ability to pay). That leaves the MVRA as the only potential authority for the second restitution order.

The $11,032.03 figure was permissible under the MVRA. Although a restitution award under the MVRA typically can encompass only those losses that resulted directly from the conviction offense, that scope of liability is broadened for offenses that involve a "scheme, conspiracy, or pattern of criminal conduct." *Maturin*, 488 F.3d at 661. Access device fraud does not require proof of a scheme, conspiracy, or pattern of criminal activity as an element.[2] *See* 18 U.S.C. § 1059(a)(5). But where, as here, "a defendant is convicted of fraud pursuant to a plea agreement . . . this Court looks beyond the charging document, and defines the underlying scheme by referring to the mutual understanding of the parties." *United States v. Adams*, 363 F.3d 363, 366 (5th Cir. 2004). In *United States v. Arnold*, 947 F.2d 1236 (5th Cir. 1991), the defendant's count of conviction charged that he caused $23,000 to be wire-transferred as part of a fraudulent scheme. *Id.* at 1237. But the district court ordered Arnold to pay $669,390 in restitution for his involvement in a conspiracy not alleged in the count of conviction. *Id.* This court affirmed because the "context" of Arnold's guilty plea evinced the parties' mutual understanding that the defendant's scheme was broader than that alleged in the charging document. *Id.* at 1238 (examining the plea

---

[2] The elements of this offense are (1) an intent to defraud, (2) effecting transactions with one or more access devices issued to another person, (3) to receive payment(s) or thing(s) of value, (4) with a total value of $1,000 or more in a one-year period. *See* 18 U.S.C. § 1029(a)(5).

agreement's language and the parties' statements during the plea and sentencing hearings).

Owusu's indictment, guilty plea, and sentencing hearing evince the parties' mutual understanding that his scheme was broader than the one count to which Owusu pled guilty, thus enabling restitution above the $5,129 figure. "We review the indictment, the factual basis, the plea agreement, and the statements made during the plea and sentencing hearings to determine the mutual understanding reached by [Owusu] and the Government regarding the scope of [Owusu's] scheme to defraud." *Adams*, 363 F.3d at 367. The indictment alleges that Owusu used two unauthorized credit cards between October 30, 2015, and October 30, 2016. Although the plea agreement makes no reference to a scheme or pattern of criminal behavior, statements made at the initial sentencing hearing suggest that the parties understood that Owusu had participated in a credit-card fraud scheme. At that hearing, the government discussed Owusu's involvement in a "scheme" with others engaged in credit card fraud. And both the government and Owusu further indicated Owusu's willingness "talk about who was . . . also involved in the scheme," and to "give information on" Owusu's co-conspirators. The district court also stated that Owusu "was part of the scheme." Accordingly, Owusu pled guilty to an offense involving a scheme, conspiracy, or pattern of criminal conduct, and thus the MVRA authorizes restitution above $5,129.33. Because Owusu's offense conduct caused $11,032.03 in losses to Capital One, the district court's second restitution order does not exceed the statutory maximum.

## IV.

While the MVRA permits the second restitution order, we must also determine whether rule 35(a) authorized the district court to amend the initial order of $9,950. Federal Rule of Criminal Procedure 35(a) provides

that, within fourteen days after sentencing, a district court "may correct a sentence that resulted from arithmetical, technical, or some other clear error." FED. R. CRIM. P. 35(a). Accordingly, while the MVRA permits the second restitution order, the district court had authority to amend the initial $9,950 order only if that order was clearly erroneous. In other words, the question is whether the MVRA required the district court to set restitution at $11,032.03. "Whether the district court had authority to resentence a defendant pursuant to Rule 35(a) is a question of law" which we review de novo. *United States v. Ross*, 557 F.3d 237 (5th Cir. 2009).

Although the district court concluded that the government had proven "almost beyond a reasonable doubt" that Owusu's offense conduct caused $11,032.03 in losses to Capital One, the district court nonetheless set restitution at $9,950. After the government filed a motion to "amend/correct" that order, the district court explained that at the initial sentencing it had concluded "that the 11,000-plus number was the correct number," but that it had "reduced it to $9,950" in order to "mitigate the impact of the sentence on his [immigration status,] because he has made great strides and he's doing better and I didn't want to see him . . . get deported over $50." The district court concluded that it had "made a mistake of law" in its initial sentence, because it "thought that [it] could apply the 3553 factors and mitigate the sentence in an appropriate fashion." The district court then entered an order amending Owusu's sentence to impose restitution for $11,032.03.

Because, as Owusu maintains, the district court did not consider his financial circumstances at the initial sentencing hearing, the district court necessarily set restitution pursuant to the MVRA. *See* 18 U.S.C. § 3663(a)(1)(B). The issue is therefore whether the district court's consideration of Owusu's immigration proceedings and the factors listed in 18 U.S.C. § 3553 constitute clear error under the MVRA. We conclude that

the district court clearly erred in basing its initial restitution order on the § 3553(a) factors and concerns for Owusu's immigration status, and therefore the district court properly exercised its rule 35(a) authority to correct that error.

Section 3664 sets forth the relevant procedures for applying the MVRA. This section requires the district court to "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." § 3664(f)(1)(A). This limitation on the factors that a district court can consider in imposing restitution makes sense when one compares the differing purposes of restitution and § 3553(a). Section 3553(a) focuses on the individual criminal defendant, while restitution focuses on the victim. "Restitution seeks to compensate the victim for all the direct and proximate losses resulting from the defendant's conduct. . . . The purpose of restitution is to put the victim back in the position he or she would have been but for the defendant's criminal conduct." *United States v. Gossi*, 608 F.3d 574, 581 (9th Cir. 2010). The MVRA therefore does not grant district courts the authority to award partial restitution. *See United States v. Roper*, 462 F.3d 336, 339 (4th Cir. 2006) (holding that district courts lack discretion under the MVRA to order partial restitution); *United States v. Leon-Delfis*, 203 F.3d 103, 116 (1st Cir. 2000) ("[T]he language of the . . . statutes regarding restitution is plain and allows the district court no discretion.").

The MVRA's text also supports this limited scope of consideration. In passing the MVRA, Congress deleted the VWPA's provision allowing district courts to consider any pertinent factor in fashioning restitution. *Compare* 18 U.S.C. § 3664(a) (West 1985) (amended 1996), *with* 18 U.S.C. 3664(f)(1)(A) (West Supp. 1999). Congress replaced that broad, discretionary provision with the requirement that the district court order restitution in the full amount of loss to each victim. 18 U.S.C.

§ 3664(f)(1)(A). Further, the MVRA gives district courts only two ways to mitigate the impact of restitution orders. They may relax the "manner" or schedule of payment based on a defendant's financial resources, and they may apportion the payment among defendants if more than one defendant has contributed to the loss. *See* 18 U.S.C. § 3664(f), (h). Similarly, the MVRA prohibits a district court from considering other mitigating factors, such as the value of a defendant's forfeited property, in ordering restitution pursuant to § 3664(f)(1)(A)-(B). *See United States v. Martinez*, 610 F.3d 1216, 1232 (10th Cir. 2010) ("[W]e conclude that the plain language of the MVRA . . . prohibits a district court from considering the value of defendant's forfeited property in initially determining the full amount of restitution."); *United States v. Taylor*, 582 F.3d 558, 565-68 (5th Cir. 2009) (per curiam); *United States v. McCracken*, 487 F.3d 1125, 1128-29 (8th Cir. 2007) ("[T]he district court has no discretion to adjust the total restitution due to the victim based on funds held by law enforcement."); *United States v. Bright*, 353 F.3d 1114, 1121 (9th Cir. 2004). The district court therefore lacked authority to base the initial restitution order on concerns for Owusu's immigration proceedings. Having recognized this clear error, the district court properly exercised its rule 35(a) authority to set restitution at the "full amount" of losses that Owusu's offense conduct caused. 18 U.S.C. § 3664(f)(1)(A).

Finding no error in the district court's imposition of $11,032.03 in restitution, we AFFIRM.