United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 10, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 03-30219
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHNNY LEROY ADAMS, also known as AJ,

Defendant-Appellant.

_____

Appeals from the United States District Court
For the Western District of Louisiana

_____

Before GARWOOD, JOLLY, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

This appeal, challenging an order of restitution under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A (2000), requires us to define the scope of the fraudulent scheme underlying a defendant's fraud conviction. We hold that when a defendant pleads guilty to fraud, the scope of the requisite scheme to defraud, for restitution purposes, is defined by the mutual understanding of the parties rather than the strict letter of the charging document. Because the defendant's conviction was derived from a guilty plea, and because the restitution exceeded the scope of the fraudulent scheme as mutually understood by the parties, we VACATE the restitution order

1

of the district court, and REMAND for resentencing in accordance with this opinion.

## I. FACTS AND PROCEEDINGS

Johnny LeRoy Adams ("Adams") and fifteen co-defendants were charged in a fifteen-count indictment with conspiracy to commit mail fraud, wire fraud, and interstate carrier fraud. 18 U.S.C. §§ 371, 1341, 1343 (2000). Count 1 describes the conspiracy, outlining the defendants' broad scheme to stage fourteen car accidents and file false insurance claims between June 1999 and March 2002; Counts 2 through 15 list the separate and overt acts performed in furtherance of the conspiracy. Each substantive count incorporates the broad conspiracy outlined in Count 1 as the requisite scheme to defraud. Of the fourteen substantive counts, Adams was named as a defendant in eleven.

Adams and the Government entered plea negotiations as to Counts 4 and 15. The Government's proposed factual basis states that Adams conspired to file two false insurance claims in connection with the two staged car accidents described in Counts 4 and 15. The factual basis, however, does not incorporate the broad conspiracy alleged in Count 1 of the indictment.

At his plea hearing, Adams refused to agree to the proposed factual basis on the grounds that the two accidents were not staged. Adams nonetheless acknowledged that he and his co-defendants conspired *after* the two accidents to aggravate the damage to the cars, and to misrepresent the facts surrounding the accidents, for the purpose of defrauding insurance companies. The Government and the district court found that Adams's version of the fraudulent scheme was sufficient to support his fraud conviction under 18 U.S.C. § 1341. The factual basis was revised accordingly, and Adams entered a plea of guilty.

The Presentence Investigation Report ("PSR") recommended that Adams pay restitution for

2

$213,000 on the grounds that he participated in the broad fraudulent scheme outlined in Count 1. Adams, however, objected that the restitution order should not exceed $34,833 – the amount of harm caused by the narrow fraudulent scheme outlined in the factual basis. The district court overruled Adams's objection, disregarded the PSR recommendation, and ordered restitution for $170,312.31, reflecting the loss resulting from the twelve counts which named Adams as a defendant. Adams timely appeals, asserting that the restitution order exceeds the district court's authority under the MVRA, 18 U.S.C. § 3663A.

## II. STANDARD OF REVIEW

"Restitution under the MVRA is a criminal penalty and a component of the defendant's sentence." *United States v. Chaney*, 964 F.2d 437, 451 (5th Cir. 1992). When the legality of a restitution order is questioned, we review that award *de novo. United States v. Cothran*, 302 F.3d 279, 288 (5th Cir. 2002). "Once we have determined that an award of restitution is permitted by the appropriate law, we review the propriety of a particular award for an abuse of discretion." *United States v. Hughey*, 147 F.3d 423, 436 (5th Cir. 1998). We therefore review *de novo* whether the restitution order is permissible under the MVRA.

## III. DISCUSSION

The MVRA authorizes a district court to order restitution to victims of certain offenses, including mail fraud. 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii). It defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme . . . , any person directly harmed by the defendant's criminal conduct in the course of the scheme." 18 U.S.C. §

3

3663A(a)(2). A defendant sentenced under the MVRA is only responsible to pay restitution for the conduct underlying the offense for which he has been convicted. *United States v. Mancillas*, 172 F.3d 341, 343 (5th Cir. 1999) (stating that the purpose of the MVRA is to "restrict[ ] the award of restitution to the limits of the offense"). "[W]here a fraudulent scheme is an element of the conviction, the court may award restitution for 'actions pursuant to that scheme.'" *Cothran*, 302 F.3d at 289 (quoting *United States v. Stouffer*, 986 F.2d 916, 928 (5th Cir. 1993)). Our review of the restitution order therefore compels us to define the scope of the scheme underlying Adams's fraud conviction.

A.    Defining the Scope of a Scheme to Defraud

The Government contends that the scope of Adams's scheme to defraud is defined by the strict letter of the indictment. It points out that the two counts of conviction, Counts 4 and 15, expressly incorporate the broad scheme alleged in Count 1. It is well established that, when a defendant is convicted of fraud by a *jury verdict*, the underlying scheme to defraud is defined, in large part, by the actions alleged in the charging document. *See United States v. Hughey,* 147 F.3d 423, 438 (5th Cir. 1998) (holding that the scheme to defraud supporting a jury's fraud conviction is limited to the temporal scope of the counts of conviction); *United States v. Pepper*, 51 F.3d 469, 473 (5th Cir. 1995) (restricting the scope of the scheme to defraud after a jury verdict to the dates and methods outlined in the counts of conviction); *Stouffer*, 986 F.2d at 928-29 (holding that restitution following a guilty verdict should reflect the temporal scope described in the count of conviction).

When a defendant is convicted of fraud pursuant to a *plea agreement*, however, this Court looks beyond the charging document, and defines the underlying scheme by referring to the mutual

4

understanding of the parties. *See United States v. Cothran*, 302 F.3d 279, 289-90 (5th Cir. 2002); *United States v. Arnold*, 947 F.2d 1236, 1238 (5th Cir. 1991). In *Arnold*, the defendant's count of conviction charged that he caused $23,000 to be wire-transferred as part of a fraudulent scheme. *Id.* at 1237. The district court nonetheless ordered Arnold to pay $669,390 in restitution for his involvement in a conspiracy not alleged in the count of conviction. *Id.* This Court affirmed on the grounds that the "context" of Arnold's guilty plea evinced the parties' mutual understanding that the defendant's scheme was broader than that alleged in the charging document. *Id.* at 1238 (determining the context of the plea from the language of the plea agreement and the parties' statements during the plea and sentencing hearings).

In *Cothran*, we similarly looked beyond the charging document to define the scope of a fraudulent scheme, observing that "[t]he bill of information is not our only source of information about the scope of the scheme." 302 F.3d at 289. We held that the express language of the plea agreement indicated that the parties mutually understood that the underlying scheme was larger than the scheme alleged in the charging document. *Id.* at 290 (reasoning that "that the plural word 'victims' and reference to 'other computer and delivery companies' [in the plea agreement] make plain that this agreement goes beyond" the one victim described in the count of conviction); *see also United States v. Hensley*, 91 F.3d 274, 277 (1st Cir. 1996) (determining the scope of the scheme "by examining the terms of the indictment and the plea agreement"); *United States v. Turino*, 978 F.2d 315 (7th Cir. 1992) (reviewing the plea agreement and statements made by the parties at the plea hearing to define the scope of the scheme to defraud).

This distinction between convictions derived from verdicts and those derived from plea

agreements is intuitive. When a defendant is convicted of fraud by a jury, the precise scope of his fraudulent scheme is defined by the jury verdict. Because juries do not supplement verdict forms with commentary, but merely state whether a defendant acted in accord with the allegations outlined in the charging document, the scope of a fraud conviction based on a jury verdict is best deciphered, as a practical matter, from the counts of conviction. When a defendant pleads guilty to fraud, however, the scope of the underlying scheme is defined by the parties themselves. *See generally Hughey v. United States*, 495 U.S. 411, 421, 110 S. Ct. 1979, 109 L. Ed.2d 408 (1990) ("The essence of a plea agreement is that both the prosecution and the defense make concessions to avoid potential losses."). The mutual understanding reached by parties during plea negotiations is normally not detailed in the original charging document, and is more often gleaned from any superceding indictments, plea agreements, and statements made by the parties during plea and sentencing hearings. Because Adams's conviction was based on a guilty plea, we hold that the district court erred by discerning the scope of Adams's fraudulent scheme from the strict letter of the indictment.

B.      The Mutual Understanding of the Parties

We review the indictment, the factual basis, the plea agreement, and the statements made during the plea and sentencing hearings to determine the mutual understanding reached by Adams and the Government regarding the scope of Adams's scheme to defraud. Adams pleaded guilty to two counts of a fifteen-count indictment. Each count of conviction describes a single staged accident followed by a single instance of fraud, and expressly incorporates the broad conspiracy alleged in Count 1 as the underlying scheme to defraud. The counts of conviction, read by themselves, indicate that Adams's conviction is based on the broad scheme to defraud outlined in Count 1.

6

Nonetheless, the context of Adams's guilty plea makes clear that the parties mutually understood that the conviction was based on a scheme to defraud that was narrower than the scheme outlined in Count 1. The Government's proposed factual basis neither incorporates Count 1 of the indictment nor references any one of the other twelve accidents allegedly staged by the defendants. After Adams pleaded guilty to participating in the narrow scheme to aggravate damage to two cars and to file two false insurance claims, the Government replied that it "disagree[d] with the facts but . . . agree[d] that [Adams] has admitted enough for the Court to find him guilty . . . ." The district court then held that Adams's version of the factual basis was sufficient to support his guilty plea, reasoning that "[t]he distinction . . . between what Mr. Adams agrees to and what the Government thinks as far as the fraud is concerned, is a distinction without a difference."

Moreover, the language of Adams's plea agreement, and the statements of the parties during the sentencing hearing, do not suggest in any way that Adams engaged in, or that he agreed to pay restitution for harm caused by, a fraudulent scheme exceeding the scope of the factual basis supporting his guilty plea. It is therefore apparent from the context of the plea agreement that the parties reached a mutual understanding that Adams's conviction was based solely on his participation in a scheme to aggravate damage to two automobiles and to file two false insurance claims.

## IV. CONCLUSION

The district court's restitution order is not authorized by the MVRA because it is not restricted to the limits of Adams's offense of conviction. We vacate the order, and remand to the district court to order restitution for the harm caused by the narrow fraudulent scheme as mutually understood by the parties. VACATED and REMANDED.

7