## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-40042

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

SAN JUANITA GALLEGOS LOZANO,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**
June 23, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, SMITH, and GRAVES, Circuit Judges.

REAVLEY, Circuit Judge:

After six days of trial, San Juanita Gallegos Lozano entered into an oral plea agreement and pleaded guilty to Count Two of a thirteen-count indictment relating to a conspiracy to defraud Medicare and Medicaid. Count Two referred to a conspiracy involving "La Hacienda Clinic" that began "on or about" April 30, 2005. Count One, meanwhile, referred to a conspiracy pertaining to the "Mission Clinic" that began "on or about" September 20, 2001. Consistent with Count Two, the factual basis proffered by the government and agreed to by the defendant established that the conspiracy began "on or about April 30th, 2005." In describing the fraudulent scheme, the factual basis did not identify either clinic.

No. 14-40042

At sentencing the district court ordered restitution based on losses traceable to both La Hacienda Clinic and Mission Clinic beginning on September 20, 2001.  Lozano did not object to the calculation of restitution but asserts on appeal that the district court plainly erred by ordering restitution based on losses traceable to the Mission Clinic and based on losses occurring prior to April 30, 2005.  Given the factual basis underpinning Lozano's guilty plea, the government agrees the district court committed plain error by ordering restitution based on losses that occurred prior to April 30, 2005, but argues the district court properly included losses traceable to the Mission Clinic conspiracy.  For the reasons that follow, we affirm in part and reverse in part.

## I.

We ordinarily review the legality of a restitution order *de novo*.  *United States v. Adams*, 363 F.3d 363, 365 (5th Cir. 2004).  Here, however, because the defendant failed to the object to the restitution calculation, we review for plain error.  *United States v. Maturin*, 488 F.3d 657, 659–60 (5th Cir. 2007).  We must determine if there was error, if it was plain, and if it affected the defendant's substantial rights.  *Id.* at 660.  "When all three of these requirements are met, we will exercise our discretion to correct the error if it seriously affects the fairness, integrity or public reputation of judicial proceedings."  *United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005) (internal quotations and brackets omitted).

## II.

## A.

"[W]here a fraudulent scheme is an element of the conviction, the court may award restitution for 'actions pursuant to that scheme.'" *United States v.*

2

No. 14-40042

*Cothran*, 302 F.3d 279, 289 (5th Cir. 2002) (quoting *United States v. Stouffer*, 986 F.2d 916, 928 (5th Cir. 1993)). "When a defendant is convicted of fraud pursuant to a plea agreement," we "define[] the underlying scheme by referring to the mutual understanding of the parties." *Adams*, 363 F.3d at 366. "The mutual understanding reached by parties during plea negotiations is normally not detailed in the original charging document, and is more often gleaned from any superceding indictments, plea agreements, and statements made by the parties during plea and sentencing hearings." *Id.* at 367.

The parties agree that fraud was an element of the crime of conviction, meaning the district court did not err by including losses related to both clinics *if* the parties mutually understood the agreed-upon scope of the fraudulent scheme extended to cover both clinics. There is substantial evidence in the record to suggest Lozano understood her guilty plea to encompass the Mission Clinic conspiracy.

While Lozano now argues it was error to include losses related to Mission Clinic, at sentencing Lozano (both personally and through her counsel) took responsibility *only* for losses relating to Mission Clinic. For example, by disclaiming any connection to La Hacienda co-conspirator Anthony Puig, Lozano effectively asserted she had nothing to do with the La Hacienda conspiracy and that her wrongdoing was confined to the Mission Clinic. Objecting to a sentence enhancement based on the intended amount of loss, Lozano's counsel "ask[ed] the Court perhaps consider the actual amount of loss just as to the Mission Clinic," and asserted "our position is that the amounts attributed to Hacienda Clinic were so remote" that criminal liability was unwarranted. Lozano's counsel seemingly thus confirmed that the scope of the conspiracy at least included Mission Clinic. After arguing before the trial court

No. 14-40042

that Lozano should be held accountable *only* for losses relating to Mission Clinic, Lozano's argument on appeal that she should *not* be held "responsible for losses related to the Mission Clinic conspiracy" because she did not understand that her guilty plea encompassed that "separate" fraudulent scheme is unconvincing.

On this record, we would have no trouble concluding Lozano and the government mutually understood that the fraudulent scheme to which Lozano pleaded guilty included the Mission Clinic conspiracy. It is enough for us to say, however, that if this conclusion is somehow erroneous, the error is not "clear or obvious." *See United States v. Coil*, 442 F.3d 912, 916 (5th Cir. 2006). We will not upset the order of restitution for losses traceable to Mission Clinic.

B.

The order is challenged on the further grounds that it requires restitution for losses sustained outside the proper temporal scope. Here, according to both the indictment and the factual basis recited by the government, the temporal scope of the offense of conviction was April 30, 2005 through January 10, 2006. Nonetheless, the district court ordered restitution based on losses commencing September 20, 2001. The parties agree that this was plain error and that remand is appropriate.

As previously stated, because this case involved a fraudulent scheme, the district court was authorized to award restitution for "actions pursuant to that scheme." *Cothran*, 302 F.3d at 289. "However, the restitution for the underlying scheme to defraud is limited to the *specific* temporal scope of the indictment." *Inman*, 411 F.3d at 595; *see also United States v. Mason*, 722 F.3d 691, 693 (5th Cir. 2013). In other words, "[a]n award of restitution cannot compensate a victim . . . for losses caused by conduct that falls outside the

4

No. 14-40042

temporal scope of the acts of conviction." *United States v. Sharma*, 703 F.3d 318, 323 (5th Cir. 2012).

As discussed above, because the conviction was secured via a guilty plea, our focus cannot be solely on the indictment. With respect to the temporal scope of the scheme, however, there is no ambiguity. As the government concedes in its briefing, "[t]he factual basis limited the temporal scope of the scheme to April 30, 2005, through January 10, 2006." In confirming the factual basis for Lozano's guilty plea, the district court asked Lozano to confirm that "sometime between on or about April 30th in 2005 and continuing until on or about January 10th of 2006" she committed the acts constituting a conspiracy to defraud Medicare and Medicaid, and Lozano affirmed these facts. Because the restitution award accounted for losses sustained prior to April 30, 2005, the district court erred. *See Inman*, 411 F.3d at 595.

We have repeatedly found plain error where a district court awards restitution based on losses that occurred outside the proper temporal scope. *See, e.g.*, *Mason*, 722 F.3d at 694; *Inman*, 411 F.3d at 595; *see also United States v. De Leon*, 728 F.3d 500, 508, n.36 (5th Cir. 2013). While none of those cases involve a plea agreement, here the factual basis unambiguously defined the temporal scope of the offense of conviction. When reciting the factual basis in court, the prosecutor twice stated the offense began on or about April 30, 2005. The district court cited that same temporal scope on the record. Moreover, we have previously found error when, after a plea agreement, the district court awarded restitution based in part on losses that occurred prior to the proper temporal scope. *See Sharma*, 703 F.3d at 323. The error was plain.

5

No. 14-40042

By the government's reckoning, the restitution was excessive in the amount of $80,533.93.  The error affected Lozano's substantial rights.  *See Inman*, 411 F.3d at 595.

While the parties agree that reversal and remand is proper, we must independently determine whether, in light of the foregoing, the error seriously affected "the fairness, integrity or public reputation of judicial proceedings." *Id.*  Even at this juncture, reversal is not automatic.  *United States v. Escalante–Reyes*, 689 F.3d 415, 425 (5th Cir. 2012) (en banc).  In every case where a district court plainly erred by ordering restitution for losses that occurred outside the proper temporal scope, we have exercised our discretion to correct the problem.  *See Mason*, 722 F.3d at 695; *Inman*, 411 F.3d at 595; *see also Maturin*, 488 F.3d at 663.  The error here improperly increased the restitution amount by more than $80,000 and merits correction.  *See Inman*, 411 F.3d at 595.

### III.

We exercise our discretion to VACATE the restitution order and REMAND to the district court for recalculation of the restitution amount in accordance with this opinion.  The conviction and sentence are otherwise AFFIRMED.

No. 14-40042

JERRY E. SMITH, Circuit Judge, dissenting:

In essence though not explicitly, the majority accuses Chief U.S. District Judge Ricardo Hinojosa of being "derelict"[1] in imposing a sentence that, in the majority's view, apparently is so "particularly egregious"[2] that it undermines the integrity of the judicial system as an "injustice so grave as to warrant disregard of usual procedural rules."[3]  Chief Judge Hinojosa is the former Chair of the U.S. Sentencing Commission and is, quite probably, the nation's foremost expert on federal sentencing.  The panel majority's reversal—albeit with the best of intentions to avoid even the possibility of error—is unfair to him  and misapplies the standards for plain-error review.   I respectfully dissent.

The majority is mistaken in saying that Chief Judge Hinojosa erred when he ordered restitution for the whole temporal scope of the Mission Clinic fraud, which was outlined in the indictment and admitted to by Lozano.  And even if the court did plainly err, we should decline to exercise our discretion to correct the error because Lozano has not shown how it seriously affected the fairness, integrity, or public reputation of judicial proceedings.

---

[1] *United States v. Frady*, 456 U.S. 152, 163 (1982).

[2] *United States v. Young*, 470 U.S. 1, 15 (1985).

[3] *United States v. Duarte-Juarez*, 441 F.3d 336, 340 (5th Cir. 2006) (per curiam) (citations omitted).

No. 14-40042

I.

The majority posits that the restitution order was flawed because the indictment and the factual proffer at the plea hearing included statements limiting the temporal scope of the fraudulent scheme. The indictment's language, which is materially similar to that offered at the plea hearing, is as follows:

> Beginning on or about April 30, 2005 and continuing on or about January 10, 2006, . . . [the defendants] did conspire and agree together . . . to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud the health care benefit programs known as Medicare and Medicaid.

The majority places too much emphasis on that statement and not enough on the other parts of the indictment.

Count Two incorporates by reference the first forty paragraphs, which lay out the specific details of the fraudulent scheme stretching back to 2001. And if that were not enough, the overt-acts section of Count Two incorporates specifics of those opening factual paragraphs, including some that covered fraudulent activities at the Mission Clinic going back to 2001. For example, paragraph 29 is incorporated into the overt-acts section and states that "from on or about September 20, 2001," Lozano continued to operate the Mission Clinic unlawfully. Paragraph 30, likewise incorporated, describes the same time frame and states that Lozano "submitted claims, caused claims to be submitted, allowed claims to be submitted, and or aided and abetted in the submission of false and fraudulent claims to Medicare and or Medicaid . . . ." The factual background has a section on the 2001–2006 Mission activities and a section on the 2005–2006 La Hacienda activities, and Count Two explicitly incorporates both sections.

Compare this case to *United States v. de Leon*, 728 F.3d 500 (5th Cir.

No. 14-40042

2013).  The defendant was convicted on a five-count indictment that charged only conduct from June 2008 through April 2010.  Because "the temporal scope of the conduct charged in the indictment" was thus limited, the court erred in awarding restitution for payments the defendant received in 2005, 2006, 2007, and 2011.  *Id.* at 507.  Unlike the indictment here, de Leon's indictment included no facts from the contested time periods.  That was a classic case of trying to expand beyond a plainly limited indictment; to the contrary is this case, in which we address only a claim that one general sentence implicitly repudiated a series of factual assertions that followed it.

We have never established a rule that a general statement about the time span of a scheme overrides the specific details of that scheme; quite to the contrary, the actions alleged in the indictment are our lodestar in navigating the murky waters of defining a fraudulent scheme.  "Although we sometimes have struggled to define the outer bounds of a particular fraudulent scheme, we have focused on the actions alleged in the indictment and their temporal scope."[4]  There is no dispute that Count Two specifically incorporated, as overt acts in furtherance of the conspiracy and the scheme, descriptions of fraudulent conduct stretching back to 2001.  If we were referencing just the strict letter of the indictment, as we would if there were a guilty verdict, that would be enough to end the inquiry.

---

[4] *United States v. Cothran*, 302 F.3d 279, 289 (5th Cir. 2002); *see also United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005) (holding that temporal scope of indictment is established by actions charged therein); *United States v. Lee*, 211 F. App'x 322, 326 (5th Cir. 2006) ("The temporal scope of the criminal behavior and the specific acts charged in the indictment define the parameters of the fraudulent scheme for purposes of determining restitution under the MVRA."); *United States v. O'Neal*, 82 F. App'x 980, 984 (5th Cir. 2003) ("In order to determine which of a defendant's actions are actions pursuant to a scheme of conduct, courts must focus on the actions alleged in the indictment and their temporal scope.").

No. 14-40042

But there is a plea agreement, so we must define the fraudulent scheme by the mutual understanding of the parties. That can be difficult because the strict letter of the indictment might not define the scheme. "The essence of a plea agreement is that both the prosecution and the defense make concessions to avoid potential losses." *Hughey v. United States*, 495 U.S. 411, 421 (1990). One of those concessions may be some limitation on the scope of the scheme, and such an understanding would not be memorialized in the indictment. *See United States v. Adams*, 363 F.3d 363, 367 (5th Cir. 2004). Because of that possibility, we must not limit our definition of the scheme to the letter of the indictment but should look also to "any super[s]eding indictments, plea agreements, and statements made by the parties during plea and sentencing hearings" to determine whether they reached a different understanding. *Id.* None of that, however, lends support to Lozano.

At the plea hearing, the government stated the agreement for Chief Judge Hinojosa:

> There is a verbal agreement between the parties, your Honor. In exchange for Ms. Lozano's plea of guilty to Count Two of the indictment the government will move to dismiss the remaining counts of the superseding indictment along with the original indictment at the time of sentencing.

Lozano's lawyer at the hearing confirmed the accuracy of that summary.

That plea agreement offers no support for an interpretation of the fraudulent scheme that is narrower than the one described by the indictment. If anything, it supports following the scheme as the indictment would define it. There is no indication that the plea negotiations resulted in an agreement to limit the temporal scope of the scheme; instead, what Lozano secured was the dismissal of twelve other counts.

10

No. 14-40042

Nor does the plea hearing help Lozano. Chief Judge Hinojosa had the prosecutor read Count Two aloud; Lozano expressly waived the reading of the incorporated introductory paragraphs and the overt acts.

> THE COURT: So you are waiving the reading of paragraphs one through forty of this indictment even though they are referred to in Count Number Two, as well as the overt acts; is that right, with regards to Count Number Two?
>
> [LOZANO]: That is correct, sir.
>
> THE COURT: But you've read them before and you're familiar with them?
>
> [LOZANO]: I have.

It is hard to understand that exchange as anything other than Chief Judge Hinojosa's diligently ensuring that Lozano understood that those paragraphs and the facts within them were part of the count of conviction.

The sentencing hearing provides still further support for a mutual understanding that reached back to 2001. A defendant's failure to object "in the district court to the characterization of the scheme or restitution amount[ ] further demonstrat[es] the parties' mutual understanding." *Cothran*, 302 F.3d at 290. The presentence report's calculation of the restitution award included pre-2005 fraudulent billings, and Lozano did not object in writing or at sentencing. And instead of proceeding as though the fraudulent scheme began in 2005, Lozano's lawyer stated at sentencing that Lozano had benefited from the scheme for five years. If any aspect of the sentencing reflects a mutual understanding of the parties that the scheme begin in 2005, I have not found it.

In the end, we are faced with (1) an indictment specifically encompassing pre-2005 activity; (2) a plea hearing at which Lozano expressed her understanding that those sections of the indictment were part of her offense conduct;

11

No. 14-40042

and (3) and a sentencing hearing at which no one objected to what should have been the elephant in the room. From all of this, it is easy to conclude that Chief Judge Hinojosa committed no error in his restitution order.

## II.

Even if there were unobjected-to error, it would have to be plain or obvious to merit correction. Because the majority characterizes the factual proffer at the plea hearing as "unambiguously defin[ing] the temporal scope of the offense of conviction," it concludes that the error was plain.

Such a holding gives too little credit to Chief Judge Hinojosa, who carefully asked for and received Lozano's assurance that she understood that the overt-acts section was part of Count Two. If the government, in opening its proffer by referencing the narrower timeframe specifically related to the La Hacienda clinic, intended to disclaim the factual background laid out in Count Two, Chief Judge Hinojosa heard no such indication.

Additionally, the majority's disposition of the two issues is strikingly incongruent. According to the majority's theory, there is sufficient evidence to show that the parties mutually understood the fraudulent scheme to include the Mission Clinic activities, or at least enough evidence that any error was not plain, but there is also enough evidence that the court plainly erred by including pre-2005 activities in the indictment. This is a hard pill to swallow when one considers that it was Mission Clinic that saw pre-2005 fraudulent activities, and there was nothing special about April 2005 for Mission Clinic. For the parties mutually to have understood the scheme to include Mission Clinic but not to reach before April 2005 would mean they arrived at an understanding that differed dramatically from the reality of the scheme and the

No. 14-40042

details admitted as part of Count Two.  Though it was within their ambit to come to such an agreement, Chief Judge Hinojosa did nothing reprehensible in failing to intuit this strange definition of the scheme without some indication from the parties.

### III.

Even if there were plain error affecting Lozano's substantial rights,[5] we can exercise our discretion to grant relief only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Escalante-Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (en banc) (alteration in original) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). Our discretion is not properly invoked just because the first three prongs of the plain-error test are met.  *Id.* at 425.  This is not the "rare" case that demands correction on plain error.[6]  Lozano was given notice that her restitution would account for pre-2005 fraud, and she took no advantage of the opportunity to object.  No one denies that she participated in the included fraud, and that is confirmed by her pleading guilty to Count Two.

The panel majority gives short shrift to the exercise of its discretion, pointing out only that this court has exercised its discretion in similar restitution cases and that the error here increased the award by over $80,000.  Neither of these is a convincing reason for the rare exercise of discretion to grant plain-error relief.

We are not bound to correct one error on plain-error review just because

---

[5] There is no dispute that a restitution award $80,000 in excess of the maximum authorized by statute would affect substantial rights.

[6] *See United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004).

we have done so before for the same type of error. That would run counter to the express instruction that the fourth prong "is meant to be applied on a case-specific and fact-intensive basis." *Puckett,* 556 U.S. at 142. Even if we identify a particular type of error that (unlike this one) generally calls into question the integrity of the system, individual cases may still have countervailing factors. *Id.* at 143. Here we do not even have the sort of error that will generally work such a damaging effect to the judicial system (in easy contrast to *Puckett,* which concerned the government's breaching a plea agreement).

Perhaps the majority means to say that we should exercise our discretion because it would seriously affect the fairness, integrity, and public reputation of judicial proceedings if similar errors were not treated identically on review; the notion might be that because we have repeatedly exercised our discretion in similar past cases, disparate treatment now might undermine the concepts of consistency and equal justice and thus might damage public confidence. Our discretion is strictly limited, however, to "exceptional circumstances"[7] in which "*the error* seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 135 (emphasis added) (internal quotation marks omitted). The fourth prong does not instruct us to examine whether the *manner in which we correct errors* affects the fairness or public reputation of judicial proceedings, which would be in serious tension with the requirement that we give personalized attention to the nitty-gritty of individual cases.

It is also not enough that the increase was $80,000. Justifying the exercise of discretion merely by citing the higher restitution collapses the fourth

---

[7] *United States v. Atkinson,* 297 U.S. 157, 160 (1966).

14

prong into the third. "[E]ven if an increase in a sentence be seen as inevitable 'substantial' in one sense it does not inevitably affect the fairness, integrity, or public reputation of judicial process and proceedings." *United States v. Ellis*, 564 F.3d 370, 378–79 (5th Cir. 2009). Assuming *arguendo* that the size of a sentence or restitution increase would be enough to satisfy the fourth prong, the inclusion of the pre-2005 fraud increased the award by only 27.7%—an unreasonably low bar for exercising our discretion.

We have no reason to exercise discretion to correct the error. Lozano had the knowledge and opportunity to object that would have allowed Chief Judge Hinojosa to consider this argument in the first instance, and Lozano was not wronged by a prosecutorial double-cross or other misconduct. Instead, she asks us to consider it, in the first instance, to help her escape restitution for her fraudulent conduct.

A relevant consideration for fairness is whether other record evidence supports the punishment. *See Escalante-Reyes*, 689 F.3d at 425. Lozano's guilty plea was made after Chief Judge Hinojosa diligently ensured that she understood the contents of the count to which she was pleading. It is highly unlikely that the judge's error, even if he committed one, is sufficiently damaging to the judicial system that we must upset the distribution of responsibilities in the justice system.

Chief Judge Hinojosa committed no error when he defined the temporal scope of Lozano's fraudulent scheme by the specifics of the indictment, supported by Lozano's other actions. Additionally, even if the judge erred, the mistake was not plain just because the sentence deviated from an unspoken

No. 14-40042

understanding of the parties. And the fairness, integrity, and public reputation of judicial proceedings are not seriously called into question when a convicted felon, on account of her own poor performance in court, is called to account for wrongdoing she actually committed.

The Supreme Court directs that relief for unobjected-to error should be extremely rare. The correct test should be something like this:

> A district judge's misbehavior in imposing an unchallenged sentence should entitle the defendant to resentencing only if reasonable adults, upon learning of the sentence, and knowing all the facts and circumstances, would walk down the street shaking their heads in despair, wondering what has become of our system of ordered liberty.

No one will despair because of this sentence. Lozano spent five years taking advantage of an ailing doctor to bilk the government of over $371,000, admitted to all the facts necessary to show her knowing engagement in the scheme, and was made to pay for the full five years because she neglected to tell the court that she and the government understood the scheme to stretch only one year.

I respectfully dissent.[8]

---

[8] *See generally Escalante-Reyes*, 689 F.3d at 431–49 (Smith, J., dissenting); Edward Goolsby, Comment, *Why So Serious? Taking the Word "Seriously" More Seriously in Plain Error Review of Federal Sentencing Appeals*, 51 HOUSTON LAW REVIEW 1449 (2014).