# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-20681

United States Court of Appeals
Fifth Circuit

**FILED**
May 25, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

CALVIN SHELTON,

      Defendant - Appellant

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CR-48-1

---

Before WIENER, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Calvin Shelton pleaded guilty without a plea agreement to conspiracy to commit mail fraud; mail fraud and aiding and abetting thereof; wire fraud and aiding and abetting thereof; and aggravated identity theft and aiding and abetting thereof. The district court sentenced him to a total of fifty-seven months of imprisonment and three years of supervised release, and ordered him and his codefendants, jointly and severally, to pay $5,642,235 in

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-20681

restitution.  He now appeals, challenging the restitution order.  Finding no error, we AFFIRM.

I

On April 27, 2012, inspectors with the United States Postal Inspection Service identified a suspicious parcel at the Express Mail processing plant in Houston, Texas, addressed to Jalan Willingham, 4015 Candle Cove, Houston, Texas.  The inspectors determined that the return address, 3427 Travelwood Lane, Atlanta, Georgia, was not a valid address.  Later that day, inspectors traveled to 4015 Candle Cove and spoke with Willingham, who gave consent to open the package.  Inside the package were approximately seventy letters from Intuit Turbo Tax, addressed to various people in Atlanta, Georgia, and containing Turbo Tax prepaid debit cards.  The letters were all addressed to one particular street in Atlanta.  Inspectors determined that the parcel containing the letters had been mailed from a postal station in Atlanta.  A review of video surveillance from the station identified Calvin Shelton, a United States Postal Service (USPS) employee, as the person who mailed the parcel, and all of the letters in the parcel had been mailed to addresses on Shelton's assigned delivery route.  Additional investigation revealed that Shelton had previously mailed similar packages to Houston, Texas.

As the investigation proceeded, Internal Revenue Service (IRS) Special Agents informed investigators that the cards were IRS income tax refunds that were generated by the electronic filing of fraudulent tax returns using stolen personal identification information (PII), including stolen social security numbers.  When contacted by IRS agents, several of the individuals whose names were on the cards confirmed they had not filed a tax return and had not authorized anyone to file a tax return on their behalves; each victim confirmed their PII was used without their knowledge or authorization.  The Turbo Tax

2

No. 15-20681

cards in the package were loaded with more than $100,000 in fraudulent refunds.

Further investigation revealed the contours of the conspiracy. Rance Hunter, a clerk in the criminal section of the Fulton County, Georgia, Clerk's Office, had access to the Fulton County Sheriff's Office database, which included PII for arrested individuals. Hunter would access the database, obtain the PII, and sell it to another employee in the Clerk's Office. That employee would then sell the stolen PII to another co-conspirator, who in turn would sell the stolen PII to Willingham's associate, Travis White, or another person designated by White. White and Willingham used the stolen PII to electronically file fraudulent tax returns, using addresses provided to them by Shelton and other USPS employees.

Once the refunds associated with the fraudulent returns were mailed to the addresses that the letter carriers had provided, the letter carriers would steal the mail and ship it to White and Willingham. In addition to Shelton, White and Willingham relied on two USPS letter carriers, in Florida and Texas. IRS agents were able to determine that White and Willingham had filed thousands of fraudulent tax returns using stolen PII, and had claimed refunds totaling $12,143,162. The United States Treasury had actually paid out $7,845,682.

On October 9, 2013, a federal grand jury returned a forty-five-count second superseding indictment against Shelton, White, Willingham, and five other co-conspirators. Shelton was charged with conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 1341 and 1349 (Count 1); mail fraud and aiding and abetting thereof in violation of §§ 2 and 1341 (Count 2); wire fraud and aiding and abetting thereof in violation of §§ 2 and 1343 (Counts 4-10); and aggravated identity theft and aiding and abetting thereof in violation of

3

No. 15-20681

§§ 2 and 1028A (Counts 25-31).  He pleaded guilty to all counts without a plea agreement.

The Presentence Report (PSR) listed total losses to the IRS for all three years of the conspiracy, but it held Shelton accountable only for the losses in the years in which he was involved.  The PSR based Shelton's offense level calculation under the Sentencing Guidelines on the $8.9 million intended loss for those two years.  It also held Shelton liable in restitution, under the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, for $5,642,235 in actual losses for the same two-year period, to be imposed jointly and severally with his co-defendants.  Shelton objected to the loss calculation in the PSR, challenging the amount attributed to him for Guidelines and restitution purposes.  At the sentencing hearing, Shelton again objected to the amount of restitution.  Overruling his objection, the district court sentenced Shelton to a below-Guidelines term of fifty-seven months of imprisonment and three years of supervised release, and held him jointly and severally liable with his co-defendants for $5,642,235 in restitution.  Shelton timely appealed.

II

"This court reviews the legality of a restitution order de novo." *United States v. Taylor*, 582 F.3d 558, 565 (5th Cir. 2009) (citing *United States v. Chaney*, 964 F.2d 437, 451 (5th Cir. 1992)).  Once this court has determined that an award of restitution is legally permitted, "we review the propriety of a particular award for an abuse of discretion." *Id*. (citing *United States v. Adams*, 363 F.3d 363, 365 (5th Cir. 2004)).  Shelton challenges the quantum of the restitution award on two grounds: (1) it includes losses not attributable to his actions, in violation of the MVRA; and (2) it includes losses attributable to a scheme broader than that to which he pleaded guilty.  We review these legal questions de novo and consider whether the district court abused its discretion with respect to the quantum of the award.  *See Ran-Nan Inc. v. Gen. Acc. Ins.*

4

No. 15-20681

*Co. of Am.*, 252 F.3d 738, 739 (5th Cir. 2001) ("This court reviews questions of law de novo."); *Koon v. United States*, 518 U.S. 81, 100 (1996) ("Little turns . . . on whether we label review of this particular question abuse of discretion or *de novo*, for an abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction. A district court by definition abuses its discretion when it makes an error of law. . . . The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." (citations omitted)).

## III

The MVRA generally requires restitution to victims of offenses under Title 18 that are committed by fraud. § 3663A(c)(1)(A)(ii). Under the Act:

> the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

§ 3663A(a)(2). "Restitution is remedial in nature, and its goal is to restore the victim's loss." *Taylor*, 582 F.3d at 566 (quoting *United States v. Webber*, 536 F.3d 584, 602–03 (7th Cir. 2008)) (internal quotation marks omitted).

Shelton argues that the district court inappropriately held him responsible for losses that were caused by the actions of other mail carriers, rather than his own actions. In other words, he argues that the district court ordered him to pay restitution to victims who were not "directly harmed by [his] criminal conduct in the course of the . . . conspiracy," in violation of the MVRA. § 3663A(a)(2). This argument is foreclosed by our precedent. In *United States v. Ismoila*, 100 F.3d 380, 398–99 (5th Cir. 1996), we held that, because a participant in a conspiracy is legally liable for all the actions of his co-conspirators, the district court was "well within its discretion to order restitution for the losses resulting from the entire fraudulent scheme and not

5

merely the losses directly attributable to [the defendant's] actions." This is consistent with the holdings of nearly all of our sister circuits that the MVRA permits a district court to order restitution for losses caused by co-conspirators. *See United States v. Newell*, 658 F.3d 1, 32 (1st Cir. 2011) ("[I]t is well established that defendants can be required to pay restitution for the reasonably foreseeable offenses of their co-conspirators."); *United States v. Boyd*, 222 F.3d 47, 50–51 (2d Cir. 2000) (per curiam) (restitution to victims named in counts as to which defendant was acquitted was valid because defendant could have foreseen co-conspirator would commit those offenses); *United States v. Newsome*, 322 F.3d 328, 337–38 (4th Cir. 2003) (ordering restitution for entire amount of loss caused by conspiracy, even though amount far exceeded the loss personally attributable to defendant); *United States v. Bogart*, 576 F.3d 565, 576 (6th Cir. 2009) (similar); *United States v. Moeser*, 758 F.3d 793, 797 (7th Cir. 2014) (similar); *United States v. Odom*, 252 F.3d 1289, 1298–99 (11th Cir. 2001) (similar); *cf. United States v. Grovo*, 826 F.3d 1207, 1220 (9th Cir. 2016) (restitution provision at 18 U.S.C. § 2259 requires a causal connection between the offense and the victim's harm, but "a defendant convicted of conspiracy is liable for restitution for not only those harms resulting from the defendant's individual actions, but also others caused by the conspiracy itself"); *United States v. Martinez*, 610 F.3d 1216, 1234 (10th Cir. 2010) (restitution order for entire amount of loss valid despite defendant's lack of knowledge of the full extent of a conspiracy where the defendant was "crucial to the success of the entire . . . scheme").

Of course, a defendant is liable in restitution only for the reasonably foreseeable losses caused by their co-conspirators. *E.g.*, *Newell*, 658 F.3d at 32 (defendant liable in restitution for "the reasonably foreseeable offenses of their co-conspirators"); *Boyd*, 222 F.3d at 51 (approving "restitution order making [defendant] liable for the reasonably foreseeable acts of all co-conspirators").

No. 15-20681

Although he argues that he did not know about the other letter carriers, Shelton does not assert that the use of postal routes in Florida and Texas was not foreseeable to him. Any such argument is therefore forfeited. *See United States v. Delgado*, 672 F.3d 320, 346 (5th Cir. 2012) (stating the general rule that "arguments not raised on appeal are forfeited").

Shelton also argues that we should read the transcript of his plea and sentencing hearings and the factual basis to narrow the scope of the scheme to the activity in which he was directly involved. In *United States v. Adams*, 363 F.3d 363, 366 (5th Cir. 2004), we explained that "[o]ur review of the restitution order . . . compels us to define the scope of the scheme underlying [the defendant's] . . . conviction." We held that "when a defendant pleads guilty to fraud, the scope of the requisite scheme to defraud, for restitution purposes, is defined by the mutual understanding of the [Government and the defendant] rather than the strict letter of the charging document." *Id.* at 364. Shelton argues that the factual basis and the statements he made at sentencing demonstrate that he pleaded guilty only to the narrow scheme involving addresses on his delivery route, not to the fraud involving the other letter carries. However, as Shelton's counsel conceded at oral argument, the Government did not accept or share his understanding that his plea was limited to the activity on his route. Absent evidence of a *mutual* understanding as to the scope of the conspiracy, any argument premised on *Adams* fails. *See id.* at 366.

## IV

Because the district court committed no error when it held Shelton responsible jointly and severally with his co-conspirators in restitution for the total losses attributable to the conspiracy, we AFFIRM.

7